IN THE

# SUPREME JUDICIAL COURT,

IN THE

# COUNTY OF LINCOLN,

ARGUED AT MAY TERM, 1842.

JACOB BORNEMAN, Adm'r. *versus* CHARLES SIDLINGER & *al.*

A *donatio causa mortis* is good, although a chose in action, accompanied by a mortgage as collateral security therefor; and notwithstanding it were in trust for the benefit of others besides the donee.

A married woman may be the recipient of such a donation, provided her husband was assenting thereto, even if he was the debtor.

And if the donation has once vested for the benefit of the donees, it is out of the power of the husband to alienate it, to their prejudice.

In an action on the mortgage by the administrator of the alleged donor, the husband of a donee, who had released to the defendant all interest in and claim to the note and mortgage, reserving all claim upon the administrator for any money paid to him, was held to be a competent witness for the defendant.

THE plaintiff, administrator of the estate of John G. Borneman, deceased, brought this writ of entry on a mortgage, given by the defendants to the intestate to secure the payment of a note of hand. It has been heretofore twice before the Court on questions of law. The statements of the facts then before the Court, and the decisions of the Court thereon, may be found in the reports of the decisions in this State, Vol. 15, p. 429, and Vol. 18, p. 225. On this trial there was but little variation from the evidence in the prior trials. Any additional

VOL. VIII. 24

proof is noticed in the opinion. The plaintiff never ren-
dered an inventory of this note, and there were no debts against
the estate. The husbands of the daughters interested gave to
the defendants releases of all interest in the note and mort-
gage, reserving all claim against the administrator, and were
offered as witnesses by the defendants. They were objected
to by the demandant, but admitted.

Upon the testimony introduced, SHEPLEY J. who presided
at the trial, instructed the jury, that if they were satisfied, that
the deceased, during his last sickness and in contemplation of
death, and with a view to make a final disposition of his estate,
made a donation of the note and mortgage to the four daugh-
ters and the children of those of them deceased, and actually
delivered them to his daughter Sally to carry that purpose into
effect, and they remained in her possession until after his de-
cease, the beneficial interest in them would vest in those for
whose benefit the donation was made; and that if Charles
Sidlinger, her husband, assented to her receiving them, he
could not afterwards by any act of his, by surrendering them,
divest the interest of the beneficial donees, or deprive them of
the benefit intended for them. And further, that if the bene-
ficial interest so passed, and there were no debts due from the
estate, so that the administrator was not entitled to collect the
note for the benefit of the creditors, he could not prosecute
this suit against the will of those beneficially interested in the
note and mortgage; and that if he, before he commenced the
suit, knew that they were so entitled to the note and mortgage,
and that it was against their will, that he should commence
this suit, he could not maintain it.

The verdict for the defendants was to be set aside, if the
instructions were erroneous, or the witnesses objected to were
improperly admitted.

*Bulfinch,* for the plaintiff, argued in support of the follow-
ing propositions.

1. The donees were incompetent witnesses.

2. The administrator is entitled to this note and mortgage
for the purpose of paying the expenses of his administration.

Borneman *v.* Sidlinger.

3. The defendants are estopped by the tender by one of them to the administrator, and a payment by the other of one half of the note and mortgage to the administrator.

4. The delivery of the note and mortgage to collect and divide, not being a gift completed, was arrested by the death of the donor.

5. There was no evidence from which the jury could presume the assent of the husband, but his assent was negatived by his tender to the plaintiff.

6. The terms of the gift were words testamentary, and amounted to a nuncupative will, and should have passed the seal of the Probate Court according to the statute.

7. The gift of one quarter of the note, to be collected, and intended for Catharine Robinson, was never vested in her, but was arrested by her death, and should go to the administrator for the benefit of all the heirs.

8. It would be dangerous doctrine, and against the policy of the law, to establish the principle, that on the delivery of the husband's note and mortgage to his wife, the promise of the wife to collect and divide it into four parts, and in four years to pay it to third persons, was a good *donatio causa mortis*.

9. The affirmance of the verdict would greatly impair the provisions of the statute of frauds, and establish doctrines dangerous and against law.

10. The promise of a *feme covert*, with the consent of her husband, to pay the note of her husband to a third person cannot be the subject of a *donatio causa mortis*, and is not susceptible of delivery.

He cited 5 Dane, c. 170, art. 2, § 28, 35; art. 4, § 1; c. 182, art. 6, § 22; art. 7, § 24; *Hatch* v. *Kimball*, 16 Maine R. 146; *Woodbury* v. *Bowman*, 14 Maine R. 154; 2 Kent, 446; Dane, c. 133, art. 3, § 6; 18 Johns R. 145; Bac. Abr. Will, &c. A.; 2 Ves. Sen. 431.

*Reed*, for the defendant, considered that this was but a mere attempt to try again the same questions, which had been

already decided by this Court in this very case, reported in 3 Shepl. 429, 6 Shepl. 225.

He denied that there was any tender. The demandant claimed the possession of the note and mortgage, and the defendant who then had them in his possession resisted this claim. A suit was brought, and he offered to give them up, but the demandant refused to accept them. Afterwards they were handed over to him, the defendant then and at all times denying his right to them. But had the facts been as his counsel now contends, it could not alter the case. When the property had once vested, the husband could not by any act of his divest it. 2 Black. Com. 293; *Scanlan* v. *Wright*, 13 Pick. 528.

He replied to the various grounds of argument urged for the demandant.

*Ruggles* replied for the demandant.

The opinion of the Court was drawn up by

WHITMAN C. J. — This case is now before the Court, the third time, upon exceptions to the ruling of the Judges presiding at the trials. Upon the exceptions taken at the first trial, it was decided, 15 Maine R. 429, that a *donatio causa mortis* is good, although of a chose in action, accompanied by a mortgage as collateral security therefor; and notwithstanding it were in trust for the benefit of others besides the donee. This decision was made upon the review of the authorities, then brought to the notice of the Court, which were somewhat in conflict with each other, and is sustained throughout by the case of *Coutant* v. *Schuyler*, 1 Paige, 316.

It is now contended, that such donation could not be made to a *feme covert;* and much less to the wife of the maker of the note and mortgage; and especially without his consent, which, it is contended, was not obtained in season, if at all, to render it effectual. The jury, however, under the instruction of the Court, seem to have found, that his consent was obtained, and in due season; and if they had not, his consent may

well be presumed, as the donation was tantamount to a release to him of one quarter part of the debt due from him.

That a *feme covert* might be the recipient of such a donation we cannot doubt, provided her husband was consenting thereto. A trust estate is under the control of a Court of equity; and the execution of the trust could, as well be enforced, if in the hands of a married woman, by bringing her husband into Court with her, as if it were in the hands of any one else. A single woman may surely take an estate in trust; and, if afterwards married, the execution of the trust might be enforced against her and her husband.

We cannot see that the circumstance, that the husband was the debtor in this case should make any difference. He was in effect the *cestui que trust* as to one quarter part of the debt, and, as to the other, he, with his wife, were the trustees. The debt might, by the operation of the principles of law and equity, be considered as virtually cancelled as to him, and the fund as in his hands for the benefit of the *cestuis que trust*; and he and his wife might compel the payment of the residue for the same purpose.

It is further insisted, that Charles Sidlinger, the husband of the donee, renounced the trust and tendered the notes and mortgage to the plaintiff, which, although at first refused, were afterwards received by the plaintiff; and that thereby the trust, if any existed, was annulled. It does not appear in the report of the evidence, or in the deposition relied upon for the proof, why or for what purpose the tender was made, or why it was refused. It appears however, that the plaintiff then had an action of trover, pending against the defendants for the note and mortgage, and the tender might have been made, and it is not improbable that it was, with a view to an effect upon the decision of that cause, favorable to the defendants; and may have been refused from an apprehension that it would be likely to have some such effect. The parties were, at the time, in a state of warfare, and might on either hand conduct unadvisedly. It does not seem to us that this transaction,

under all the attendant circumstances, was deserving of much consideration.

The Judge at the trial, upon this point, charged the jury in substance, that if the donation had once vested, for the benefit of the *cestuis que trust*, it was out of the power of Charles Sidlinger to alienate it to their prejudice; and we are satisfied that this instruction was correct. The jury seem also to have found that the donation was made in the last sickness of the deceased, that the note and mortgage were actually delivered over at the time, and with the consent of the husband of the donee.

But it is urged that the witnesses who were admitted to testify in the cause for the defendants, after filing releases, should have been excluded. To us it seems, that, after filing their releases, if they had any interest, it was in favor of a recovery on the part of the plaintiff. They had released all their claims excepting to a distributive share of what the plaintiff might recover. Their only interest, then, was that he should recover.

*Judgment on the verdict.*